UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JUAN JOSE DIAZ,

                             Petitioner,                    02 Cr. 1622 (RPP)

          - against -                               04 Civ. 1829 (RPP)

                                                        **OPINION AND ORDER**

UNITED STATES OF AMERICA,

                             Respondent.

-------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      The Petitioner, Juan Jose Diaz ("Diaz"), presently in custody and subject to a

sentence imposed by this Court, seeks to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255. The motion is denied for the reasons set forth below.

**BACKGROUND**

      On June 27, 2001, a grand jury in the Northern District of Ohio indicted Diaz and

twelve other defendants for, among other things, conspiring to distribute cocaine. Diaz

was subsequently arrested on September 6, 2001 in the Southern District of New York.

Upon his arrest in New York, Diaz was fingerprinted and interviewed by the Pretrial

Services Office. Based on the Government's statements at Diaz's detention hearing held

on September 10, 2001 before Magistrate Judge Kevin N. Fox, it appears that Diaz told

Pretrial Services that he was a legal permanent resident and that he had one misdemeanor

conviction. (Transcript of Criminal Cause for Detention Hearing, Sept. 10, 2001, at 3, 4.)

Diaz's counsel at the detention hearing also stated that Diaz's family had advised him

that Diaz was "a legal resident." (Id. at 7.)

At the conclusion of Diaz's detention hearing, Judge Fox set a number of bail conditions, one of which required that he verify his immigration status. (Id. at 20-21.) Shortly thereafter, Judge Dan A. Polster of the Northern District of Ohio stayed Judge Fox's order and Diaz was never released on bail. (Order of Hon. Dan A. Polster ("Polster Order") dated Sept. 12, 2001, attached as Ex. A to Diaz's Letter Memorandum ("Diaz Mem.") dated Dec. 1, 2004.) An identity hearing was held in the Southern District of New York on October 4, 2001, during which Diaz suffered some kind of medical emergency that halted the proceeding. The identity hearing was resumed and completed on October 19, 2001, and Diaz was ordered removed to the Northern District of Ohio to face the charges in the Indictment.

On December 10, 2001, in the Northern District of Ohio, Diaz pled guilty pursuant to a plea agreement to Count One of the Indictment, which charged him with conspiring to distribute, and possess with intent to distribute, more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. (Plea Agreement ("Plea Agmt.") dated Dec. 10, 2001, attached as Ex. B to Diaz Mem.) In exchange for Diaz's plea, the Government agreed that it would not "seek or otherwise pursue additional criminal charges against the defendant for possible violations of federal laws now known by the United States and for which the defendant could be prosecuted." (Plea Agmt. ¶ 13.) The plea agreement also states that "the defendant's criminal history will be determined by the Court after an investigation by the Federal Probation Department." (Id. ¶ 10.)

Following his guilty plea, the United States Probation Department for the Northern District of Ohio compiled Diaz's Presentence Report ("PSR"), which it released on January 28, 2002. The PSR correctly reported that, in addition to the misdemeanor

conviction that Diaz reported to Pretrial Services in September, he had a prior narcotics conviction and had been deported in 1992. Judge Polster sentenced Diaz to 60 months' imprisonment on February 22, 2002.

On December 30, 2002, Diaz was indicted in the Southern District of New York for illegal reentry to the United States without securing the prior approval of the Attorney General, in violation of 8 U.S.C. § 1326. This Indictment appears to have been prompted by an Immigration and Naturalization Service memorandum dated November 19, 2002, which concludes that fingerprints taken from Diaz after his arrest in the fall of 2001 matched those taken from Diaz when he was deported in 1992. (INS Memorandum dated Nov. 19, 2002, attached as Ex. C to Def. Mem.) Diaz pled guilty to illegal reentry on March 24, 2003 and, on April 26, 2003, this Court sentenced him to 60 months' imprisonment, running concurrently with the remaining portion of his sentence from the Northern District of Ohio and leaving 27 months and 10 days to be served consecutively. Diaz did not file a notice of appeal and, therefore, this judgment became final ten days after Diaz was sentenced. See Fed. R. App. P. 4(b)(1)(A).

On March 8, 2004, Diaz filed the instant motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel because his attorney disregarded his instruction to file a notice of appeal. The Court held an evidentiary hearing on September 27, 2004. At the conclusion of the hearing, the Court denied the motion to the extent that it was based on the failure of Diaz's attorney to file a notice of appeal. However, the Court permitted Diaz's current attorney to amend his § 2255 motion to assert a new argument: that Diaz's conviction for illegal reentry in the Southern

District of New York was precluded by the terms of his December 10, 2001 plea agreement in the Northern District of Ohio.

**DISCUSSION**

Section 2255 of Title 28 of the United States Code provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a petitioner fails to raise a claim of error on direct review, the claim will be considered procedurally defaulted and thus ineligible for review in a § 2255 proceeding unless the petitioner "can first demonstrate either 'cause' [for the default] and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). "The petitioner in a § 2255 proceeding bears the burden of proof by a preponderance of the evidence." Feliz v. United States, No. 01 Civ. 5544 (JFK), 2002 U.S. Dist. LEXIS 15661, at *10 (S.D.N.Y. Aug. 22, 2002); see also Harned v. Henderson, 588 F.2d 12, 22 (2d Cir. 1978) ("It is, of course, well settled that in federal habeas corpus proceedings the burden of proving a constitutional claim lies with the petitioner and that the nature of that burden is the customary civil one of a preponderance of the evidence.").

Diaz argues that his prosecution in the Southern District of New York for illegal reentry pursuant to 8 U.S.C. § 1326 was precluded by the terms of his Northern District of Ohio plea agreement. The relevant language of the plea agreement states that "the Government agrees that it will not seek or otherwise pursue additional criminal charges

against the defendant for possible violations of federal laws now known by the United States and for which the defendant could be prosecuted." (Plea Agmt. ¶ 13.) According to Diaz, the United States "knew" or "should have known" that he had committed the offense of illegal reentry when the plea agreement was executed on December 10, 2001.

Because Diaz did not raise this claim on direct review, the claim is procedurally defaulted unless he can demonstrate cause and actual prejudice, or actual innocence. To establish "prejudice," the petitioner must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1981); Rodriguez v. Mitchell, 252 F.3d 191, 203 (2d Cir. 2001). Thus, Diaz bears the burden of proving, by a preponderance of the evidence, that, on December 10, 2001, some agency or office of the United States government had actual knowledge of "possible violations of federal laws . . . for which [Diaz] could be prosecuted," specifically a violation of 8 U.S.C. § 1326, which prohibited Diaz's reentry to the United States. A violation of 8 U.S.C. § 1326 occurs when "the defendant is (1) an alien, (2) who has been arrested, and (3) deported, and (4) thereafter is found in the United States, (5) without having obtained the specified consent of the Attorney General." United States v. Mancebo-Santiago, 875 F. Supp. 1030, 1032 (S.D.N.Y. 1995).

There is no question that the Government knew that Diaz was an alien found in the United States when it executed the plea agreement on December 10, 2001. However, to establish prejudice, Diaz must demonstrate that, on December 10, 2001, the United

States knew that Diaz had been previously arrested and deported, and that he returned to the United States without obtaining the specified consent of the Attorney General.

Diaz first argues that, based on the information available to the Government, it knew that Diaz had committed the crime of illegal reentry by the time the plea agreement was executed on December 10, 2001. To that end, Diaz notes that the Pretrial Services office in the Southern District of New York generated a report on September 6, 2001, indicating that his criminal history and immigration status were unknown and that the office was awaiting results of INS and criminal background checks. Diaz also points out that he was fingerprinted on September 6, 2001, more than 90 days before the plea agreement was executed, and that the Government was aware no later than September 12, 2001 that Diaz went by the names "Jose Diaz" and "Jose Diaz Jimenez." Diaz contends that the above facts demonstrate that the Government had knowledge that he was guilty of illegal reentry by December 10, 2001.

Diaz has not demonstrated, by a preponderance of the evidence, that, on December 10, 2001, the United States knew that Diaz could be prosecuted for a possible violation of 8 U.S.C. § 1326. Diaz has not demonstrated that any agency or office of the United States determined Diaz's immigration status and criminal history prior to the execution of the plea agreement, even though the Pretrial Services Office had apparently requested this information on September 6, 2001. Similarly, although the Government possessed Diaz's fingerprints as early as September 6, 2001, Diaz has not presented any evidence that the Government analyzed the fingerprints before the INS issued its November 19, 2002 memorandum concluding that Diaz had been deported in 1992. Furthermore, without any evidence indicating how and when the Northern District of

Ohio Probation Office learned about Diaz's true immigration status and criminal history, the fact that the January 28, 2002 Presentence Report included that information does not support a conclusion that this information was known to the United States on December 10, 2001. Thus, Diaz has failed to demonstrate, by a preponderance of the evidence, that the United States knew that he could be prosecuted for a possible violation of 8 U.S.C. § 1326 on December 10, 2001.

Diaz also argues that this Court should vacate his conviction for illegal reentry because the United States "should have known" by December 10, 2001 that he had violated § 1326. As the Second Circuit has stated, "In general, plea agreements are subject to ordinary contract law principles, except that any ambiguity is resolved 'strictly against the Government.'" United States v. Cimino, 381 F.3d 124, 127 (2d Cir. 2004) (quoting United States v. Ready, 82 F.3d 551, 559 (2d Cir. 1996)). Where a plea agreement is "'unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly.'" In re Altro, 180 F.3d 372, 377 (2d Cir. 1999) (quoting United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986)). Here, the plea agreement language unambiguously guaranteed Diaz protection only from being charged for "possible violations of federal laws now known by the United States and for which the defendant could be prosecuted." (Plea Agmt. ¶ 13 (emphasis added).) Accordingly, the Court need not determine whether the United States "should have known" about Diaz's illegal reentry offense when the plea agreement was executed.

**CONCLUSION**

For the reasons stated above, Diaz's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is hereby denied.

IT IS SO ORDERED.

Dated: New York, New York
June 27, 2005

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Opinion and Order sent to:

*Counsel for Petitioner*:

Law Offices of Frank Handelman
Three New York Plaza
New York, NY 10004
Attn:   Frank Handelman
Tel:    212-422-0500
Fax:    212-422-1177


*Counsel for Respondent*:

David N. Kelley, United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
Attn:   Michael A. Levy, A.U.S.A.
Tel:    212-637-2346
Fax:    212-637-2387